UNITED STATES, Appellee

v

MICHAEL EARL AMUNDSON, Aviation Structural Mechanic H.
Second Class, U. S. Navy, Appellant

No. 28,504

February 7, 1975

*Lieutenant Stephen T. Myking,* JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Joseph Evans O'Leary,* JAGC, USNR.

*Lieutenant Commander Harvey E. Little,* JAGC, USN, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel P. N. Kress,* USMC.

*Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen, Captain Raymond Michael Ripple,* and *Captain Robert B. Kurzwiel,* filed a brief *amicus curiae* on behalf of the Department of the Army urging affirmance.

## OPINION OF THE COURT

QUINN, Judge:

On this appeal, the accused contends his conviction for wrongful sale of military property and two thefts must be reversed and the charges dismissed because he was denied a speedy trial.

The first theft took place on April 17, 1972, at the Naval Air Station, Whidbey Island, Oak Harbor, Washington; the wrongful sale occurred on May 30; and the second larceny was committed on June 11. On August 12, the accused's term of enlistment expired, but as investigation of the offenses indicated his complicity, he was placed on "legal hold," which resulted in a stay of the processing of his discharge. See *United States v Clay,* 48 CMR 334 (NCMR 1973), *petition denied,* 23 USCMA —, 49 CMR — (February 19, 1974)(No. 27,929); Bureau of Naval Personnel Manual § 3840260. Charges were preferred on October 10 and various proceedings followed, such as investigation under Article 32, Uniform Code of Military Justice, 10 USC § 832, and preparation of the pretrial advice required by Article 34, UCMJ, 10 USC § 834. The case came on for trial on April 3, 1973. Throughout the proceedings, no formal restraint was imposed upon the accused; he engaged in his regular duties as an aircraft mechanic, and received his regular pay and allowances.

■ Preliminarily, we confront the problem of determining the beginning date of the period for which the Government is accountable as regards the timeliness of the proceedings. Usually, that date is the day formal charges are preferred or the day restraint is imposed upon the accused, whichever first occurs.

*United States v Smith,* 17 USCMA 427, 38 CMR 225 (1968). As no confinement or other restraint was formally imposed, the beginning date would be that of the preferment of the charges, October 10, 1972. However, appellate defense counsel contend that the date should be August 12, the day the accused's term of enlistment expired. That contention is not founded on the normal restrictions on personal liberty that are part of military status, see *United States v Lowery,* 46 CMR 546 (AFCMR 1972), but on the fact that after the "legal hold" was imposed, the accused's "treatment" was so different from "those around him" and so restrictive of his liberty as a member of the military as to amount to "arrest," and, thus, "to trigger the requirements" of the Uniform Code as to timeliness of prosecution. The label attached to a particular action by the Government does not determine the substantive nature of the act,[1] but even the closest scrutiny of the alleged burdens upon the accused subsequent to the "legal hold" does not reveal any of them, singly or collectively, as functional equivalents of confinement, arrest, or restriction, within the meaning of the Uniform Code, or that they were operative as of August 12.[2]

Five circumstances are perceived as equivalent to restraint upon accused's personal freedom of movement. Two of these are that the accused was deprived of the companionship of his wife and child and that he became ineligible for reemployment by United Air Lines, for which he had worked prior to his enlistment. Whatever may be said about the Government's responsibility for these conditions,[3] it is manifest, primarily, that neither operated to restrict accused's liberty as a member of the mili-

---

[1] United States v Shamel, 22 USCMA 361, 362, 47 CMR 116, 117 (1973).

[2] Our conclusion as to this issue makes it unnecessary to consider whether the principal and dissenting opinions in United States v Hout, 19 USCMA 299, 41 CMR 299 (1970) agree that an "administrative hold" of the kind involved in this case is insufficient, over an accused's protest, to justify retention in the service beyond the term of enlistment for longer than a reasonable time to

process his discharge.

[3] Government counsel contend that the accused is legally mistaken as to his reemployment right. In support, they cite 50 USC, Appendix, § 459(g)(1) and pertinent United Air Lines regulations. We do not reach the merits of the opposing contentions. As to accused's separation from his family, counsel contend that the separation was accomplished by accused, without Government responsibility.

tary, and neither was effective as of August 12.

According to accused's testimony, he had 90 days after termination of his enlistment to apply for reemployment; consequently, he could not have been denied the right until at least October 10. As to the separation from his family, that was effected on the accused's own initiative on an unspecified date "prior" to his expected discharge; it was continued after consultation with his counsel and consideration of the probable date of trial. If the Government is chargeable with any responsibility in connection with the separation, therefore, it can only be because the trial was held after the time expected by the accused. As counsel was obtained by the accused on October 10, the time of consultation could not have been earlier than that date.

The remaining circumstances purporting to amount to restraint are first, that the "ID" cards of the accused and his wife, which expired on August 11, were not renewed, and, as a result, they were denied the right to purchase at the station exchange and commissary by personnel of the respective facilities; secondly, that accused was denied assignment to work detachments for temporary duty at distant places, including Japan; thirdly, that accused was denied leave on three separate occasions. Apart from the merits of these contentions, all of which Government counsel dispute, we cannot imagine how any are comparable to the restraints upon individual freedom of movement that are associated with confinement, arrest, or restriction. In any event, as accused asserts these deprivations occurred on August 12, the burden of proof of that fact was upon him. He did not meet that burden.

As to the privilege of purchase, the accused's wife left the station some time before the "legal hold" and did not return until mid-March 1973; the denial of

the right to purchase to her, therefore, occurred long after the preferment of charges. As to the accused, his testimony supports a conclusion he successfully used his old card at various times between his wife's departure and her return; he did not indicate the day of his first refusal. As to the work detachments, he testified he requested assignment "quite a few times," but again he did not indicate when he made the first request; for all that appears, therefore, the first assignment could have been scheduled for a time after October 10. As to the requests for leave, the accused specified three approximate dates, but all were after August 12 and as no effective date appears, even the first could have been for a time after the preferment of the charges. Again, therefore, the record does not show denial of an alleged right effective as of August 12 or even a later date before October 10.

■ Rejection of accused's contention that the cited burdens were tantamount to the restraints upon personal freedom contemplated by Article 10 of the Uniform Code means that the beginning of the period of the Government's accountability is October 10, the date of preferment of the charges. *United States v Adams,* 21 USCMA 401, 45 CMR 175 (1972). It also means that the period of 175 days between October 10 and the date of trial, April 3, does not constitute a violation of Article 10, and, therefore, is not presumptively untimely and prejudicial within the rule propounded in *United States v Burton,* 21 USCMA 112, 44 CMR 166 (1971).[4] To avoid these consequences, appellate defense counsel urge us to apply the presumption of a prejudicial violation of Article 10 to a situation like that in which the accused finds himself. They argue that even if there is no restraint upon an accused's liberty within the meaning of Article 10, a presumption of prejudicial delay should be invoked if the time between

---

[4] In United States v Burton, 21 USCMA 112, 118, 44 CMR 166, 172 (1971), the Court stated the presumption as follows: "[I]n the absence of defense requests for continuance, a presumption of an Article 10 violation will exist when pretrial confinement exceeds three

months. In such cases, this presumption will place a heavy burden on the Government to show diligence, and in the absence of such a showing the charges should be dismissed." *See also* United States v Driver, 23 USCMA 243, 49 CMR 376 (1974).

the preferment of charges or "the date it clearly appears the Government contemplates trying the accused," whichever first occurs, and the trial exceeds 120 days.

Undeniably, in every court-martial, the Government should try to complete "all proceedings . . . as expeditiously as the circumstances allow." *Dunlap v Convening Authority,* 23 USCMA 135, 138, 48 CMR 751, 754 (1974). Agreement on this objective does not mean, however, that the time can be "quantified into a specified number of days or months" for all cases. *Barker v Wingo,* 407 US 514, 523 (1972). See also *United States v Hounshell,* 7 USCMA 3, 7, 21 CMR 129, 133 (1956). Congressional recognition of the added burdens placed upon the Government and the accused by confinement, arrest, or equivalent restraint, and our experience therewith, "demonstrated the need for a guideline" in cases where such restraint was imposed. *Dunlap v Convening Authority, supra* at 138, 48 CMR at 754, and dissenting opinion of Chief Judge Duncan at 140, 48 CMR at 756; see also *United States v Sloan,* 22 USCMA 587, 588, 48 CMR 211, 212 (1974). Responding to the need, we indicated that a delay in excess of a specified period between restraint and the required action would "place a heavy burden on the Government to show diligence." *United States v Burton, supra* at 118, 44 CMR at 172; *cf. United States v Driver, supra.* We are not persuaded that, notwithstanding the absence of any restraint upon the accused's personal liberty, the timeliness of the pretrial proceedings should be tested by a special rule of a measured period of time, rather than by the general rule which entails a "functional analysis" of the facts in each case to determine whether the Government proceeded with reasonable diligence and without deliberate oppression

of the accused. *United States v Sloan, supra* at 588, 48 CMR at 212.

Appellate defense counsel contend that the time taken to complete several proceedings subsequent to preferral of the charges was "by and large, without explanation." Referring to the investigation required by Article 32, they maintain that the evidence does not justify "the lapse in excess of two weeks" between the time the investigation was ordered (October 16) and the first Article 32 session (November 3), and they represent that the record is "silent" as to the 3-week period between the first and second session (November 22). A stipulated chronology of events, however, indicates circumstances that can properly be regarded as justification for these periods of time.[5] As to the interval between the order for the investigation and the first session held by the investigating officer, it appears that a number of persons were implicated with accused. All cases were referred to the same investigating officer. The first hearing was in the case of one Imboden; eight witnesses were heard. The second hearing was the next day for the accused; seven witnesses were heard. After notification of his appointment, the investigating officer obviously had to plan a schedule of hearings and determine the availability of the witnesses and counsel for the respective accused. The record indicates that counsel for each accused was different; it is silent as to whether there were also different witnesses. Given the number of persons whose attendance was required, it can, in our opinion, reasonably be concluded that the 18 days taken to effect the arrangements and establish a schedule was not an inordinate length of time.

Turning to the interval between the first and second sessions of the Arti-

---

[5] The Court of Military Review also noted the necessity for the procurement of a statement from a victim of one of the accused's thefts, who had been discharged from the service and was not available at the first hearing. The court noted that the victim's statement was dated November 8 and that the victim resided in Texas; it apparently implied from these circumstances that some additional time was required for the statement to reach the situs of the hearing in the state of Washington. These matters do not appear in the stipulated chronology or in the supplementary testimony taken on the motion to dismiss. We have, therefore, disregarded them in our consideration of appellate defense counsel's contentions in regard to the conduct of the Article 32 investigation.

cle 32 investigation, we have already noted that at the November 3 session seven witnesses testified; two additional witnesses testified at the session on November 22. The reasonable inference is that the latter witnesses were not heard at the first session because they were not available, and did not become available, until the second session. Moreover, there was not total inactivity during the challenged period. As the Court of Military Review observed, the accused's case was closely "intertwined" with Imboden's. The investigating officer held hearings in Imboden's case on November 7 and November 13. During that period, a request was made for substitution of Government counsel in all the investigations on the ground that the assigned counsel was scheduled for early release from active duty; the substitution was accomplished 6 days later. In the light of these events, the delay between the first and second session impresses us as reasonable, and perhaps even unavoidable.

Two other periods of time previous to trial are challenged by the accused. The first is the interval between December 15, 1972, and January 16, 1973. The chronology indicates that accused's commanding officer forwarded accused's case and Imboden's on December 15 to Commander, Fleet Air Whidbey; on January 16, that officer forwarded the case to Commandant, Thirteenth Naval District. The accused contends the time taken is not justified. The second interval is the period from January 22 to March 1, which dealt with preparation of the pretrial advice of the staff judge advocate. The Court of Military Review considered both periods together and determined that, while there were brief intervals of inactivity, the record refuted "any possible assertion of command indifference." In our opinion, sufficient evidence supports that determination.

■■ As for the transfer of the cases, apart from allowance of a reasonable time for receipt of the case by the Commander of Fleet Air, it appears that for about 2 weeks that commander's staff judge advocate was, successively, engaged in an investigation aboard the U.S.S. *Constitution* and on emergency leave. If the remaining period was longer than necessary, it was not so long as to be intolerable and inexcusable. *United States v Burton, supra* at 117, 44 CMR at 171. To account for the time taken to prepare the pretrial advice, the officer responsible for the initial draft testified that he was also counsel in 24 court-martial cases. During the period he prepared the draft of the advice, he tried six cases and discharged the duties of Acting Head, Military Justice Section. He worked on the draft on one weekend and at various times during the period. Other lawyers in the office were as busy, or almost as busy, as he. An accused anxious to see the end of the proceedings against him might view the time taken by this officer for the pretrial advice as longer than necessary, but viewed from the standpoint of a detached and impartial person, it does not appear unreasonable for a case in which the accused is under no limitation on his personal freedom and is engaged in his regular work.

In an effort to charge the Government with the obligation to proceed with utmost dispatch, the accused contends that between December 1 and January 15, his counsel made weekly "demands and inquiries" for trial. The Court of Military Review found that the initial "demand" was addressed to a captain who had "no official connection with the case," and that the later inquiries were made of a defense counsel in a companion case. As these persons were not in the position to make an "official response," the court gave the demands "little weight in assessing [the alleged] overall government negligence" during this period. Ample evidence supports the court's findings and determination.

Accused's final challenge is predicated upon alleged prejudice to him, resulting from the total time required to bring him to trial. The specific factors of prejudice are those considered in connection with determination of the beginning date of the period of the Government's accountability, that is, deprivation of the right to purchase at the exchange and commissary, denial of leave, denial of assignment to special off-base details, separation from his family, and loss of the right of reemployment with his former civilian employer.

■ In our earlier discussion of these

circumstances, we indicated that the accused's separation from his family was attributable directly to his own actions. There is evidence that the accused's effort to obtain a renewal of his ID, which would allow him to buy at the exchange and commissary, was so inadequate as to justify a conclusion that he was largely responsible for the situation. Whether the accused actually lost his right of reemployment is, as Government counsel indicate, questionable as a matter of law. In any event, the Government was not bound to conform the progress of the court-martial proceedings to the time schedule of a private contractual right of the accused, especially in the absence of evidence to indicate it was aware of that right. As to the requests for leave, the Court of Military Review implicitly found that denial of the first request was proper because the Article 32 hearing was imminent. The court did not comment on the succeeding requests other than to note they were only informal but if they had been formal, they "would not have been granted." According to the accused's testimony, the reason given for all the denials was the expectation of an early trial. There is no evidence of deception or gross negligence in the representation. From the accused's admission that he did not ask his wife to return until mid-March 1973 because he and his counsel anticipated trial, it may be inferred that the person who denied the requests for leave also believed in good faith that the case was likely to come up for trial during each period of requested leave. The denials of leave, therefore, cannot be regarded as deliberate oppression of the accused. We conclude, therefore, that the evidence supports the finding of the trial judge and the Court of Military Review that the time taken to bring the accused to trial did not result in such prejudice to him as to justify grant of the defense motion to dismiss the charges.

The decision of the Court of Military Review is affirmed.

Judge Cook and Senior Judge Ferguson concur.